Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Li Ping Smith*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Li Ping Smith,

        Plaintiff,

   v.

The Prudential Insurance Company of America; J.P. Morgan Chase Bank, N.A.; J.P. Morgan Chase Bank, N.A. Disability Plan,

        Defendants.

Case No.

**COMPLAINT**

Now comes the Plaintiff Li Ping Smith (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant J.P. Morgan Chase Bank, N.A. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential group long-term disability policy is known as Group Contract No.: G-50684-DE (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy was included in and part of an employee benefit plan, specifically named the J.P. Morgan Chase Bank, N.A. Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Prudential functioned as the claim administrator of the Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

6. Prudential operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the

decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Prudential's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Any Gainful Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11. After working for the Company as a loyal employee in the position of a SRE Marketing Associate, Plaintiff became disabled on or about August 30, 2013, and has remained continuously disabled since that date due to serious medical conditions. Plaintiff has remained continuously disabled as that term is defined in the relevant Policy due to medical conditions that are not subject to a "limited pay period" as that term is defined in the Policy.

12. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits which was administered by the Company, meaning it made the determination as to whether Plaintiff was disabled. The relevant short-term disability Plan was self-insured by the Company, meaning that it paid all short-term disability benefits if Plaintiff was found disabled. Plaintiff's short-term disability benefits have been paid and exhausted with the Company.

13. Following the exhaustion of her short-term disability claim and benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Prudential. Prudential made every decision in Plaintiff's long-term disability claim.

14. Upon information and belief, the relevant Prudential Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> "You are disabled when Prudential determines that:
> - You are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury;* and
> - You are under the *regular care* of a *doctor;* and
> - You have a 20% or more loss in your *monthly earnings* due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
>
> - You are unable to perform that duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and
> - You are under the regular care of a doctor."

15. In support of her claim for long-term disability benefits, Plaintiff submitted to Prudential medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

-4-

16. In a letter dated March 25, 2014, Prudential informed Plaintiff it was denying her claim for long-term disability benefits.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's March 25, 2014 denial of her claim and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

18. Plaintiff submitted to Prudential a September 30, 2014 narrative letter authored by her treating doctor who opined, "…it is unlikely that [Plaintiff's conditions] will allow her to return to work in any occupation."

19. Plaintiff also submitted to Prudential an evaluation report dated May 26, 2014, wherein after a several hour evaluation, an evaluating medical professional concluded that based on his clinical evaluation and the results of Plaintiff's evaluation, it was his medical opinion Plaintiff was disabled from working in any occupation due to medical conditions that are not subject to any limitation in the Prudential Policy.

20. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated October 10, 2014, who after interviewing Plaintiff and reviewing the aforementioned evidence along with the definition of disability and the "limited pay period" language set forth for certain medical diagnoses in the Policy, concluded, "…[Plaintiff is] unable to work in any occupation that may exist in the national economy."

21. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

22. Plaintiff also submitted to Prudential three (3) sworn affidavits authored by her husband, friend and previous co-worker, and long-time friend, who all confirmed she is unable to work in any occupation due to medical conditions that are not subject to a Policy limitation, and that these conditions had not improved in any meaningful way since the date she originally became disabled.

23. In a letter dated November 21, 2014, Prudential informed Plaintiff it was approving her claim for long-term disability benefits for a closed period of time; from March 4, 2014 through May 31, 2014.

24. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's November 21, 2014 denial of her claim and submitted additional medical and vocational evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy due to medical conditions that are not subject to a "limited pay period" as that term is defined in the Policy.

25. Plaintiff submitted to Prudential a July 8, 2015 narrative letter authored by her treating doctor who opined that due to medical conditions not subject to any "limited pay period" as defined in the Policy, "…[Plaintiff] has been unable to work in any occupation since 9/3/13, and she will continue to be unable to work for an indefinite period."

26. In support of her claim, Plaintiff submitted to Prudential a March 28, 2015 re-evaluation report, wherein after a several hour evaluation, the evaluating medical professional concluded it remained his opinion Plaintiff was disabled and unable to work in any occupation due to medical conditions that are not subject to any limitation in the Prudential Policy.

27. Further supporting her claim, Plaintiff submitted a vocational addendum report authored by the same certified vocational expert dated June 6, 2015, who after re-

interviewing Plaintiff and reviewing the aforementioned evidence along with the definitions of disability concluded, "Significant…impairments make it impossible for [Plaintiff] to work in any occupation. She is unable to perform the material and substantial duties of her prior occupation and my opinion has not changed that she is unable to vocationally master the skills necessary for any occupation."

28. During the period of time Prudential was reviewing her claim, Plaintiff applied for, was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

29. Plaintiff informed Prudential that her claim for Social Security disability benefits had been approved and she submitted documentation to Prudential from the SSA which confirmed the approval.

30. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of September 3, 2013. Plaintiff's medical evidence was so persuasive that SSA approved her claim without her even needing to attend a hearing before an Administrative Law Judge.

31. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Prudential Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay her benefits for a number of years is relevant evidence for this Court to consider with regard to the unreasonableness of Prudential's decision to terminate and deny Plaintiff's claim and benefits.

32. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

33. Plaintiff also submitted to Prudential two (2) sworn affidavits authored by herself and her husband, both confirming she is unable to work in any occupation due to medical conditions that are not subject to a Policy limitation, and that these conditions had not improved in any meaningful way since the date she originally became disabled.

34. In a letter dated July 24, 2015, Prudential informed Plaintiff it was approving her claim for long-term disability benefits effective June 1, 2014.

35. In a letter dated January 4, 2016, Prudential informed Plaintiff it had scheduled her to attend a medical evaluation with a medical professional of its choosing.

36. Upon information and belief, Plaintiff asserts Prudential's medical professional may be a long time medical consultant for Prudential and/or the disability insurance industry. As a result, Prudential's medical professional may have an incentive to protect her own consulting relationship with Prudential and/or the disability insurance industry by providing medical evaluations and reports, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the termination of Plaintiff's benefits and denial of her claim.

37. On March 8, 2016, Prudential provided Plaintiff with a copy of its medical professional's medical evaluation report.

38. In a letter dated March 24, 2016, Plaintiff informed Prudential she had sent a copy of its medical professional's report to the doctor who had previously evaluated her,

and requested for Prudential to provide her with until April 22, 2016 to submit this doctor's response.

39. Notwithstanding Plaintiff's March 24, 2016 letter, and without responding to her request, in a letter dated March 28, 2016, Prudential informed Plaintiff it was terminating her long-term disability benefits. In its letter, Prudential informed Plaintiff she did not "…meet the definition of being disabled from performing any gainful occupation" and that she had exhausted the 24 months of benefits available to her under the "limited pay period" in the Policy.

40. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's March 28, 2016 termination of her benefits and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy and is disabled due to a medical condition not subject to a "limited pay period" as that term is defined in the Policy.

41. In support of her claim, Plaintiff submitted to Prudential a May 11, 2016 response letter authored by the medical professional who had evaluated her on two separate occasions, as well as reviewed the report from Prudential's medical professional. In his response letter, the doctor opined, "In my opinion, the evaluation by [Prudential's medical professional] was invalid and should not have been taken into consideration in determining LTD status."

42. In a November 22, 2016 letter, the same medical professional opined Plaintiff is, "…unable to work on a competitive full time basis in any occupation…" due to medical conditions that are not subject to any "limited pay period" as defined in the Policy.

43. Further supporting her claim, Plaintiff submitted to Prudential a September 21, 2016 vocational report authored by another vocational expert who interviewed Plaintiff

1  as well as reviewed the aforementioned evidence, Prudential's medical professional's report, the definition of disability and the "limited pay period" provision in the policy and opined that due to her medical conditions that are not subject to "limited pay period," "…it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] meets the "any occupation" definition of disability in the Prudential Policy…and should be granted benefits based on Prudential's criteria for disability."

44. Plaintiff also submitted updated medical records from each of her treating providers and two (2) additional sworn affidavits authored by herself and her husband, both confirming she is unable to work in any occupation due to medical conditions that are not subject to any "limited pay period" as defined in the Policy, and that Plaintiff's condition had not improved in any meaningful way since the date she originally became disabled.

45. As part of its final review of Plaintiff's claim for long-term disability benefits, Prudential obtained a medical records only "paper review" of Plaintiff's claim from a physician or medical professional of its choosing. Prudential did not disclose the identity of the reviewing physician or medical professional to Plaintiff, either during its administrative review of her claim or following its final denial.

46. Upon information and belief, Plaintiff asserts the reviewing physician and/or medical professional may be a long time medical consultant for Prudential and/or the disability insurance industry. As a result, the reviewing physician and/or medical professional may have an incentive to protect his/her own consulting relationship with Prudential and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

47. In letters dated September 22, 2016 and October 5, 2016, in order to engage Prudential in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity for her and her medical professionals to respond to the reviews prior to Prudential rendering a determination in her claim.

48. Prior to rendering its denial in Plaintiff's claim, Prudential refused to honor Plaintiff's request and never shared with her the medical records only "paper review" authored by its reviewing physician or medical professional so she could respond to the report and perfect her claim. Prudential's failure to provide Plaintiff with the opportunity to respond to the reviewing physician or medical professional's report is an ERISA procedural violation, it precluded a full and fair review pursuant to ERISA and also violated Ninth Circuit case law. On this issue, the Ninth Circuit held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

49. In a letter dated November 17, 2016, notwithstanding Plaintiff's aforementioned evidence which proved she met any definition of disability in the Policy and that some or all of her disabling medical conditions are not subject to a "limited pay period" as set forth in the Policy, Prudential notified her it had denied her claim for continued long-term disability benefits.

50. Prudential's November 17, 2016 denial is erroneous because although one or some of Plaintiff's disabling medical conditions may have been subject to a "limited pay

period" as set forth in the Policy, not all of her disabling medical conditions are. As referenced *supra,* Plaintiff's treating medical providers have rendered opinions that she is unable to work in any occupation due to disabling medical conditions that are not subject to any policy limitation or a "limited pay period" as alleged by Prudential in its November 17, 2016 final denial.

51. In its denial letter dated November 17, 2016, Prudential notified Plaintiff she had exhausted her mandatory administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

52. Prudential's November 17, 2016 denial letter is clear evidence that it breached its fiduciary duty and failed to provide a full and fair review, while in the process of also committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff. Prudential violated ERISA for numerous reasons including but not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met all definitions of disability in the Policy, and that her claim and disabling medical conditions are not subject to a "limited pay period" as set forth in the Policy.

53. In evaluating Plaintiff's claim on appeal, Prudential owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it, "solely in [her] best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

54. Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal in order to prove not only that she is disabled as that term is defined in the Policy, but disabled due to a medical condition or medical conditions that are not subject to a "limited pay period" as set forth in the Policy. Prudential's failure to investigate the claim and to engage in this dialogue, and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence she did not receive a full and fair review.

55. Plaintiff asserts Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by concluding she is not "disabled" due to a non-limited medical condition as that term is defined in the Policy; by failing to have Plaintiff evaluated and her claim reviewed by truly independent medical professionals with testing that provided valid test results; by failing to credit Plaintiff's reliable evidence; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of her medical conditions and the work limitations set forth in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing physician's report by submitting the necessary evidence to perfect her claim so she could prove that she is "disabled" as that term is defined in the Policy and disabled due to medical conditions

that are not subject to a "limited pay period" as defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

56. Plaintiff asserts a reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Prudential undertook as the decision maker and the payor of benefits. Prudential's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

57. When Prudential denied Plaintiff's claim and asserted its "limited pay period" Policy provision, it saved a significant amount of money.

58. Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts of interest. Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Prudential to retain a reviewing medical professional in Plaintiff's claim, and of *any* individual who reviewed her claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Prudential's decision to deny her claim.

59. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant that they justify *de novo* review.

60. As a direct result of Prudential's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits,

in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.

61. Upon information and belief, Plaintiff alleges that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

62. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

63. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she is disabled and meets any definition of disability in the Plan and/or Policy due to a medical condition and/or medical conditions that are not subject to a "limited pay period" as that term is defined and set forth in the Plan and/or Policy. As a result of the Court's finding that Plaintiff is disabled due to a medical condition and/or medical conditions that are not subject to a "limited pay period" as set forth in the Plan and/or Policy, she seeks an Order that she is entitled to disability income benefits as well as any other non-disability employee benefits she may be entitled as a result of the Court's

1  finding that she is disabled, from the date she was first denied these benefits through the
2  date of judgment with prejudgment interest thereon;
3      B.    For an Order directing Defendants to continue paying Plaintiff the
4  aforementioned benefits until such a time as she meets the conditions for the termination of
5  benefits;
6      C.    For attorney's fees and costs incurred as a result of prosecuting this suit
7  pursuant to 29 U.S.C. §1132(g), including for any Court ordered remand to the Plan
8  Administrator and/or Defendants; and
9      D.    For such other and further relief as the Court deems just and proper.

DATED this 9th day of February, 2017.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff